IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| FLORISTS' TRANSWORLD DELIVERY, INC., a corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 03-807-KI |
| vs. | ) ) | OPINION |
| CLARENCE WALKER FOR FLOWERS INC., a corporation, KENNETH W. UPHOFF, and DAVID C. UPHOFF, | ) ) ) ) ) | |
| Defendants. | ) | |

Kathryn P. Salyer
Farleigh, Wada & Witt, P.C.
121 S. W. Morrison, Suite 600
Portland, Oregon 97204-3102

Neil D. Greenstein
TechMark
55 S. Market Street, 16th Floor
San Jose, California 95113

Attorneys for Plaintiff

Page 1 - OPINION

Richard A. Canaday
Ky Fullerton
Miller Nash, LLP
3400 U. S. Bancorp Tower
111 S. W. Fifth Avenue
Portland, Oregon 97204-3699

   Attorneys for Defendants Clarence Walker for Flowers, Inc. and
    Kenneth W. Uphoff

David C. Uphoff
105 North Killingsworth Street
Portland, Oregon 97217

   Pro Se Defendant

KING, Judge:

Plaintiff Florists' Transworld Delivery, Inc. ("FTDI") brings claims for trademark infringement, false designation of origin, and dilution under federal law; trademark dilution, injury to business reputation, and trademark counterfeiting under Oregon law; and trademark and trade name infringement, passing off, and unfair competition under common law. Before me is FTDI's Motion for Summary Judgment (#36). None of the remaining defendants filed a response to the motion. As set forth below, I grant plaintiff's motion.

## BACKGROUND

On October 25, 2004, based on the parties' report that they had settled, this court issued a 60-day order, dismissing the case without prejudice and with leave, upon good cause shown within 60 days, to have the order of dismissal set aside. Upon the request of FTDI, the case was reinstated and defendants were directed to respond to FTDI's motion for summary judgment, which had been filed before the 60-day order was issued. Kenneth W. Uphoff, David C. Uphoff

and Clarence Walker for Flowers, Inc., the remaining defendants, have not filed responses to FTDI's motion for summary judgment.

The court previously dismissed Dorothy Uphoff and Clarence Walker.[1]

Defendant Clarence Walker for Flowers Inc. ("Flowers Inc.") became a member of FTDI in 1970, and was licensed to use the famous "Mercury Man" logo and other FTDI trademarks. The company's membership was terminated on October 31, 2002 for failure to honor its obligations to FTDI. The company continued to use the FTD trademarks, and ignored a cease and desist letter. Flowers Inc. continued to use the FTD trademarks until at least April, 2003. The individual defendants are guarantors of the company's obligations and liable for its debts.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

---

[1]Although FTDI indicated during a telephone conference that the company had also been dismissed, there is no docket entry indicating that fact.

**DISCUSSION**

    A.    <u>Trademark Infringement</u>

FTDI alleges trademark infringement pursuant to 15 U.S.C. § 1114(1).

The statute governing this cause of action directs: "Any person who shall, without the consent of the registrant (a) use in commerce any reproduction . . . or colorable imitation of a registered mark in connection with the sale . . . which such use is likely to cause confusion . . . shall be liable in a civil action . . . ." 15 U.S.C. § 1114(1)(a).

Likelihood of confusion is analyzed using eight specific factors. <u>AMF, Inc. v. Sleekcraft Boats</u>, 599 F.2d 341, 348-49 (9th Cir. 1979). The eight factors to consider are: (1) similarity of the marks; (2) relatedness or proximity of the two companies' products or services; (3) strength of the mark; (4) marketing channels used; (5) degree of care likely to be exercised by purchasers in selecting goods; (6) infringer's intent in selecting the mark; (7) evidence of actual confusion; (8) likelihood of expansion in product lines. These factors are flexible, and are to be used merely as a roadmap to evaluate the overall likelihood of confusion. <u>Cohn v. Petsmart, Inc.</u>, 281 F.3d 837, 841 (9th Cir. 2002).

Here, the factors favor FTDI: the marks are the same, the two companies' products are the same, the marketing channels are the same, and even a customer exercising great care would be confused by defendants' use of the FTD marks. With respect to the third criteria, FTDI asserts that its marks are strong; its marks have been widely used for decades and are nationally recognized symbols of FTDI and its reputation for delivering floral arrangements. FTDI also asserts that I can infer intent to confuse given that defendants were warned that they were infringing on FTDI's trademarks. See <u>Brookfield Communications, Inc. v. West Coast Ent.</u>

Corp., 174 F.3d 1036, 1059 (9th Cir. 1999) (factor favors plaintiff "where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark").

Intent to confuse consumers is not required for a finding of trademark infringement. Id. Given that defendants continued to use FTDI's trademarks after its agreement was terminated, and based on my review of the <u>Sleekcraft</u> factors, I find consumers were likely to be confused by Flowers Inc.'s continued use of the FTD marks. See <u>Century 21 Real Estate Corp. v. Sandlin</u>, 846 F.2d 1175, 1180 (9th Cir. 1988) (use has been determined "likely to cause confusion" in circumstances where a former franchisee/licensee agreement has been terminated). Accordingly, I grant FTDI's motion for summary judgment against Flowers Inc. for trademark infringement.

B.   <u>Liability of Individual Defendants</u>

FTDI argues the individual defendants are liable as guarantors of the indebtedness of the company. The personal guarantee in the Application for Change of Ownership, signed by both David Uphoff and Kenneth Uphoff, provides that each of the defendants:

> [J]ointly and severally, unconditionally guarantee to FTD, the prompt payment, when due, of principal and interest owing on the Corporation's account with FTD and of all other obligations or indebtedness of the Corporation to FTD now existing or *hereafter arising in favor of FTD against the Corporation.*

Declaration of LaSalle F. Smith, Exhibit B at 2 (emphasis added).

I find that this personal guarantee renders each of the individual defendants jointly and severally liable for damages resulting from the corporation's trademark infringement.

Because I find that Flowers Inc. is liable for trademark infringement under 15 U.S.C. § 1114(1)(a), and that the individual defendants are responsible under their personal guarantee, I need not reach FTDI's remaining claims.

C.   Relief

   1.   Damages

Plaintiff seeks damages under 15 U.S.C. § 1117(a). That statute provides, in relevant part:

> When a violation of any right . . . shall have been established in any civil action . . . the plaintiff shall be entitled, . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by plaintiff, and (3) the costs of the action . . . . In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case . . . . The court in exceptional cases may award reasonable attorney fees to the prevailing party.

FTDI asserts that defendants have had gross revenues of at least $259,154 from sales made during the time that they were infringing, October 31, 2002 to October 2003. Accordingly, it seeks $777,462 (treble the defendants' profits), $60,855.67 for attorney fees, and prejudgment interest commencing on the date of service of the complaint, June 17, 2003. Plaintiff also seeks an injunction.

Since it is the court's duty to assess damages, and since I must do so "subject to the principles of equity," I find that FTDI is entitled to a judgment of $25,915. I do not accept plaintiff's invitation to treble the damages, or to award prejudgment interest. Neither do I accept plaintiff's request to award damages based solely on defendants' gross revenues as alleged by FTDI. FTDI's submissions contain very little financial information regarding the operation of Flowers Inc. It obtained documents showing gross revenues, which totaled $259,154 for a twelve month period. FTDI has not provided "with a reasonable certainty" that these gross

Page 6 - OPINION

revenues are due to the infringing activity. Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1407-8 (9th Cir. 1993). Furthermore, FTDI "is not entitled to a windfall." Id. at 1405 (citation omitted). While there is limited expense information, a "Cleared Transaction Detail" report for November 2003 reflects expenses of $20,565, and $29,715 for December 2003. It would appear that expenses were exceeding revenues so that there were minimal, if any, profits. This seems to be confirmed by the fact that there were a number of overdrafts shown in the company's bank account.

While I recognize that the statute requires FTDI to prove defendants' sales only, and while David Uphoff was evasive and sarcastic in his deposition and provided little information regarding profits and expenses, I note that when defendants applied for membership with FTD in 1970, their gross revenues were approximately $235,000 per year. It could be inferred, then, that defendants had the same revenue before they were licensed to use the FTD marks as they did in 2003. Accordingly, I have applied a ten percent profit factor to the gross revenues as alleged by FTDI, and find that a judgment of $25,915 would be just, according to the circumstances of this case.

    2.  Attorney Fees and Costs

I find that plaintiffs are entitled to their reasonable attorney fees, pursuant to 15 U.S.C. § 1117(a), because the case is exceptional. A trademark case is exceptional where the defendant acted maliciously, knowingly, deliberately or willfully. Earthquake Sound Corp. v. Bumper Industries, 352 F.3d 1210, 1216 (9th Cir. 2003). FTDI informed defendants of the confusion caused by their continued use of the FTD marks, and demanded that defendants cease and desist.

Despite the demand, defendants continued to use the FTD marks. Defendants acted knowingly in infringing the FTD marks.

As of September 16, 2004, plaintiffs assert that they are entitled to $60,855.67 in attorney fees. Reasonable attorney fees are determined by first calculating the "lodestar." Jordon v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir. 1987). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996). The party seeking an award of fees must submit evidence to support the number of hours worked and the rates claimed. Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000). "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary." Id. (internal quotation omitted).

While there is a strong presumption that the lodestar figure represents a reasonable fee, the district court may adjust the award from the lodestar figure upon consideration of additional factors that may bear upon reasonableness. Jordon, 815 F.2d at 1262; Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975).

After reviewing the material submitted in support of plaintiff's motion, I find with one exception that plaintiff's counsels' hourly rates are reasonable given the attorneys' experience and the prevailing rates in this community. The attorney rates are: Kathryn P. Salyer $235 and $245; Kimberley Hanks McGair $185; Michelle Holman Kerin $170 and $190; Joseph Hearst $325; Frederick Taylor $285; paralegal fees of $80 and $90; and secretary fees of $45.

I find that Neil Greenstein's rate of $450 is not reasonable. Mr. Greenstein, a California lawyer, relies on the 2003 Report of the Economic Survey performed by the American Intellectual Property Law Association. Based on this report, he asserts that his rate is below the billing rate of $470 shown for the 75th percentile of partners in private practice in California, and that his rate is near the national rate of $420 for the 75th percentile of Intellectual Property counsel with 25 to 29 years of experience.

As Mr. Greenstein is aware, however, this court uses the Oregon State Bar Economic Survey as the benchmark for reasonableness of rates, <u>Roberts v. Interstate Distributor Co.</u>, 242 F. Supp.2d 850, 857 (D. Or. 2002), and the general rule is that the rates of attorneys practicing in the forum district are used. <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1405 (9th Cir. 1992). There is no indication that local counsel were unavailable, unwilling or incapable of representing FTDI in this action. <u>See</u> <u>id.</u> I find that $350 represents a reasonable billing rate. Such a rate is higher than the 95th percentile for attorneys with over 30 years of experience in the Portland area and higher than attorneys in the 95th percentile practicing business/corporate litigation, but such a rate recognizes that the latest survey was issued in 2002. <u>See</u> 2002 Economic Survey, available at http://www.osbar.org/_docs/econsurv02/ecosurvey02_w.pdf (August 2005).

In addition, I do not accept plaintiff's counsels' representation as to the total number of hours expended on this matter. For example, I note that Mr. Greenstein includes in his total hours the initials of attorneys (e.g. JHC, RMV, TLK and AS) for whom Mr. Greenstein has not set forth a billing rate. I find Mr. Greenstein reasonably expended 29.9 hours and Mr. Hearst reasonably expended 16.2 hours. Similarly, Mr. Taylor includes in his total hours the hours of Jacob C. Reinbolt, without setting forth Mr. Reinbolt's hourly rate. I find Mr. Taylor reasonably

expended 43.8 hours. I accept Ms. Salyer's declaration. Therefore, I award $38,265 in attorney fees.

Finally, I grant plaintiff's motion to the extent it pertains to costs. Ms. Salyer asserts costs in the amount of $1,401.82, and Mr. Greenstein asserts costs in the amount of 615.59.[2] This amount reasonably reflects the amount plaintiff expended on costs. Mr. Taylor also asserts costs in the amount of $1,271.03, but neglects to provide any documentation in support of his request and I deny his request on this basis. Plaintiffs are entitled to a total of $2,017.41 in costs.

    3.    <u>Injunction</u>

In addition, I grant plaintiff's request for an injunction pursuant to 15 U.S.C. § 1116, as set forth in an Order issued this day.

**CONCLUSION**

Based on the foregoing, FTDI's motion for summary judgment (#36) is granted. FTDI is entitled to a judgment of $25,915, attorney fees in the amount of $38,265, costs in the amount of $2,017.41, and an injunction according to the terms set forth in the Order issued this day.

Dated this   5th   day of August, 2005.

                                      /s/ Garr M. King
                                      Garr M. King
                                      United States District Judge

---

[2] Both Ms. Salyer and Mr. Greenstein include in their cost summaries the cost for filing the complaint. I have subtracted that cost from Mr. Greenstein's request.